UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PETER KARLIN, individually and on behalf of
himself and all others similarly-situated,

                    Plaintiff,

          -against-

MCS MORTGAGE BANKERS, INC., DAVID
KOTKIN, in his professional and individual
capacities, STEPHEN PETUCK, in his professional
and individual capacities, and FRANK WALTER,
in his professional and individual capacities,

                    Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Peter Karlin ("Plaintiff") on behalf of himself and all others similarly situated, by and through his attorneys, Stevenson Marino LLP, files this Complaint against Defendant MCS Mortgage Bankers, Inc. ("Corporate Defendant"), and the individual Defendants David Kotkin ("Kotkin"), in his professional and individual capacities, Stephen Petuck ("Petuck"), in his professional and individual capacities, and Frank Walter ("Walter"), in his professional and individual capacities (collectively, the "Individual Defendants"), alleges upon knowledge as to himself and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon the Corporate Defendant's and Individual Defendants' (collectively, the "Defendants") failure to compensate Plaintiff and all others similarly situated in compliance with the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

2.      Defendants violated Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et. seq., by failing to pay Plaintiff and all similarly situated loan originators, loan officers,

mortgage loan officers, mortgage consultants and other similarly titled positions (collectively, "Loan Originators") overtime for hours worked in excess of forty in a workweek due to their misclassification of Loan Originators as outside sales representatives.

3.      Defendants violated the New York Labor Law ("NYLL"), as well as other state laws, by failing to pay Loan Originators overtime for hours worked in excess of forty in a workweek due to their misclassification of Loan Originators as outside sales representatives.

4.      Plaintiff brings this action pursuant to 29 U.S.C. § 207(a), *et seq.* on behalf of himself and all current and former employees of the Defendants who from three years preceding July 24, 2017, through the disposition of this action were Loan Originators classified as exempt from overtime and have not received overtime pay when they worked more than 40 hours in a workweek in violation of the FLSA (hereinafter, the "Loan Originator Collective").

5.      Plaintiff brings this action on behalf of himself and all current and former employees of the Defendants who from six years preceding July 24, 2017 through the disposition of this action were Loan Originators in New York that (1) were/are classified as exempt from overtime and have not received overtime pay when they worked more than 40 hours in a workweek in violation of the N.Y. Lab. Law § 160, *et seq.,* N.Y. Comp Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; and/or (2) did not receive the required Notice and Acknowledgment of Pay form in violation of NYLL §195; and/or (3) did not receive accurate wage statements in violation of NYLL § 195 (hereinafter, the "Loan Originator Class").

6.      Plaintiff brings a separate individual claim against Defendants for breach of contract in failing to remit all remuneration earned on or about the time of his cessation of employment ("Breach of Contract Claim").

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over Plaintiff' claims pursuant to 28 U.S.C. § 1331, as to the Plaintiff's Loan Originator Collective claims pursuant to 29 U.S.C § 201, *et seq*.

8.     This Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367, as to the Plaintiff's Loan Originator Class claims and the Breach of Contract Claim.

9.     In addition, the Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b).

10.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

*Plaintiff*

11.     At all relevant times herein, Plaintiff is considered a "person" and an "employee" entitled to protection as defined by the FLSA and NYLL.

12.     Plaintiff is an adult individual over the age of 18, residing in the County of Queens, State of New York.

13.     Defendants employed Plaintiff from in or about October 2014 through March 2016 at 24 Great Neck Road, Great Neck, New York (hereinafter, the "Office").

*Defendants*

14.     At all relevant times, Corporate Defendant MCS Mortgage Bankers, Inc., was a New York Corporation, registered with the New York State Department of State as a domestic business corporation, with its principal place of business at 20 Oak Street, Patchogue, New York, 11772, and engaged in the business of mortgage lending.

15.     At all times hereinafter mentioned, Defendant Petuck was and is the owner and a board member of MCS.

16.     At various times, Defendant Petuck was the overseer of the day-to-day operations of the Corporate Defendant; made both supervisory and managerial decisions for the Corporate Defendant; had the power to, and did in fact, hire and fire employees; and also supervised and controlled employee work schedules and conditions of employment, and determined the rates of employee pay and methods of payment.

17.     At all times hereinafter mentioned, Defendant Walter was and is a board member and the Chief Executive Officer of MCS.

18.     At various times, Defendant Walter was the overseer of the day-to-day operations of the Corporate Defendant; made both supervisory and managerial decisions for the Corporate Defendant; had the power to, and did in fact, hire and fire employees; and also supervised and controlled employee work schedules and conditions of employment, and determined the rates of employee pay and methods of payment.

19.     At all times hereinafter mentioned, Defendant Kotkin was and is the President of MCS.

20.     At various times, Defendant Kotkin was the overseer of the day-to-day operations of the Corporate Defendant; made both supervisory and managerial decisions for the Corporate Defendant; had the power to, and did in fact, hire and fire employees; and also supervised and controlled employee work schedules and conditions of employment, and determined the rates of employee pay and methods of payment.

21.     The Corporate Defendant had annual gross revenues in excess of $500,000 for all relevant periods herein.

22.     At all relevant times the Corporate Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

23.     The Corporate Defendant, on behalf of itself and all other Individual Defendants, issues and enforces top-down corporate policies and practices.

24.     Collectively, Defendants have directed the work of Plaintiff, the Loan Originator Collective, and the Loan Originator Class, and have benefited from work performed that Defendants suffered or permitted from them.

25.     Plaintiff, the Loan Originator Collective members, and the Loan Originator Class members have worked in excess of 40 hours per workweek, spent a majority of their time each workweek working in the Corporate Defendant's offices and did not receive overtime compensation as required by the FLSA and NYLL.

**FACTUAL ALLEGATIONS REGARDING LOAN ORIGINATORS**

26.     All Loan Originators, including Plaintiff Karlin, employed by Defendants over the last six years had essentially the same job duties – to sell mortgage loans principally from Defendants' offices.

27.     Pursuant to Defendants' uniform company-wide employment policies and procedures, Plaintiff Karlin's primary job duty was to sell mortgage loans.

28.     Pursuant to Defendants' uniform company-wide employment policies and procedures, all Loan Originators shared the same primary job duty-selling mortgage loans.

29.     Defendants employed other Loan Originators at the Office, as well as other locations in New York and throughout the country, all of whom performed the same or similar duties as Plaintiff Karlin.

30.     Defendants managed Plaintiff's work, including the amount of overtime worked, at its office. Defendants dictated, controlled and ratified the wage and hour policies and all related employee compensation policies at Defendants' offices.

31.     All of Defendants' loan officers performed the same or similar job duties as the Plaintiff Karlin.

32.     Plaintiff Karlin regularly worked a great majority (i.e., 80% to 90%) of his time during each work week in the Office.

33.     Plaintiff Karlin observed that all of the Loan Originators in his Office similarly worked significantly more than half of their time during each work week in the Office.

34.     Due to the nature of the Loan Originators' duties and the policies set forth by Defendants, Loan Originators, like Plaintiff, did not regularly work away from the Office, but rather spent well more than 50% of their time physically working in Defendants' offices.

35.     During the relevant period, Plaintiff Karlin, the Loan Originator Collective members and the Loan Originator Class members worked more than forty (40) hours per workweek.

36.     Defendants entered into contracts with Karlin, whereby Defendants required Karlin to work "on a full time basis" and required Karlin to "acknowledge that a minimum of forty (40) hours per week [was] required."

37.     Defendants entered into contracts with each Loan Originator Collective member and each Loan Originator Class member, whereby Defendants similarly required each individual member to work "on a full time basis" and required them to "acknowledge that a minimum of forty (40) hours per week [was] required."

38.     Plaintiff Karlin, the Loan Originator Collective members and the Loan Originator Class members did not receive overtime, but worked well in excess of forty (40) hours per week.

39.     During each workweek Plaintiff Karlin worked for Defendant, Plaintiff Karlin worked between fifty (50) to seventy (70) hours per workweek, but did not receive overtime compensation. The sole exception to the foregoing arose where Plaintiff Karlin took a vacation day, sick day, or a holiday, all of which Defendants' records will show.

40.     Plaintiff Karlin's schedule, which he worked every work week, absent a vacation day, sick day, or a holiday, all of which Defendants' records will show, was:

> Monday: 8:30 – 9:00 a.m. work in the office until 8:00 – 9:00 p.m. (i.e., 11.5 – 12.5 hours).
> - Tuesday: 8:30 – 9:00 a.m. work in the office until 8:00 – 9:00 p.m. (i.e., 11.5 – 12.5 hours).
> - Wednesday: 8:30 – 9:00 a.m. work in the office until 8:00 – 9:00 p.m. (i.e., 11.5 – 12.5 hours).
> - Thursday: 8:30 – 9:00 a.m. work in the office until 8:00 – 9:00 p.m. (i.e., 11.5 – 12.5 hours).
> - Friday: 8:30 – 9:00 a.m. work in the office until 6:00 – 7:00 p.m. (i.e., 11.5 – 12.5 hours).

> Based on the foregoing schedule, Plaintiff Karlin worked no less than 57.5 hours to 62.5 hours Monday through Friday throughout his tenure with Defendants, absent a vacation day, sick day, or a holiday, all of which Defendants' records will show.

41.     In addition to the foregoing standard schedule, as referenced in the preceding paragraph, Plaintiff Karlin also frequently worked on Saturdays.  His standard Saturday schedule, resulted in him arriving at the office at 10:00 a.m. and leaving on or about 6:00 p.m.

42.     At all relevant times, Plaintiff Karlin, the Loan Originator Collective members, and the Loan Originator Class members received a salary for forty hours of work plus commissions, but never received overtime for hours worked in excess of forty.

43.     Plaintiff Karlin's salary during his employment with Defendants varied during his tenure, but in all cases resulted in him receiving compensation for only the first forty hours of work.

44.     Plaintiff Karlin, the Loan Originator Collective members, and the Loan Originator Class members were never paid overtime for any hours they worked over forty in a workweek.

45.     Plaintiff Karlin's experience of receiving a salary for only forty hours of work and not being paid overtime for hours worked in excess of forty in a workweek was identical to the conditions of employment experienced by the Loan Originator Collective members and the Loan Originator Class members.

46.     From March 1, 2016 through the cessation of his employment in or about March 24, 2016, Plaintiff Karlin was paid an annualized salary of $40,000 per year.

47.     Plaintiff Karlin would almost always take no more than a 30-minute interrupted working lunch at his desk, which was located in the Office.

48.     Defendants did not record the number of hours worked by Plaintiff Karlin in violation of the FLSA and NYLL, but required Karlin to work no less than forty hours per week.

49.     Defendants did not record the number of hours worked by the Loan Originator Collective members and the Loan Originator Class members in violation of the FLSA and NYLL.

50.     Defendants' corporate headquarters disseminate Defendants' wage and hour practices and policies that apply (and applied) to Plaintiff Karlin, the Loan Originator Collective members, and the Loan Originator Class members.  It is through these top-down practices and

policies that the Defendants impose their unlawful pay practices on Plaintiff Karlin, the Loan Originator Collective members, and the Loan Originator Class members.

51.     Defendants misclassified Plaintiff Karlin, the Loan Originator Collective members, and the Loan Originator Class members under the outside salesperson exemption.

52.     Plaintiff Karlin and other similarly-situated Loan Originators are not administratively exempt because, among other things, their primary duty is the sale of mortgage loan products, which involves the day-to-day carrying out of production side of Defendants' business.

53.     This practice of failing to pay Plaintiff Karlin and similarly situated Loan Originators overtime violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. §201 *et seq*., specifically§ 207(a)(l). As a result of this unlawful practice, Plaintiff Karlin and other similarly-situated Loan Originators did not receive all overtime that was due to them.

54.     Defendants' practice also violates the provisions of New York Labor Articles 6 and 19 and the New York Codes Rules and Regulations §§138-2.1 *et seq*. As a result of this unlawful practice, Plaintiff Karlin and similarly situated Loan Originators did not receive all overtime that was due to them.

55.     Defendants intentionally, willfully, and improperly failed to pay overtime wages and other benefits to Plaintiff Karlin and other similarly-situated Loan Originators during their employment in direct violation of the FLSA.

56.     Defendants intentionally, willfully, and improperly failed to pay overtime wages and other benefits to Plaintiff Karlin and other similarly-situated Loan Originators during their employment  in direct violation of New York Labor Articles 6 and 19 and the New York Codes Rules and Regulations §§138-2.1 *et seq.*

## **COLLECTIVE ACTION ALLEGATIONS**

57.     Plaintiff Karlin repeats and re-alleges each of the above paragraphs.

58.     Plaintiff Karlin seeks to bring this suit to recover from Defendants his full payment of all unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. §§ 207 and 216(b), on his own behalf as well as those Loan Originator Collective members, which is hereby defined as:

> a.   current and former employees of the Defendants who from July 24, 2014 through the disposition of this action were Loan Originators classified as exempt from overtime and give consent to file a claim to recover damages for: (1) unpaid overtime compensation that is legally due to them for hours worked in excess of forty in a workweek.

59.     Defendants treated Plaintiff Karlin and all Loan Originator Collective members similarly in that all Loan Originators: performed similar tasks, as described above; were subject to the same laws and regulations; were paid in the same or similar manner; were required to work in excess of forty (40) hours each workweek; and were not paid overtime compensation for hours worked in excess of forty (40) in a workweek.

60.     At all relevant times, Defendants are and have been aware of the requirement to pay Plaintiff and all similarly situated Loan Originators at an amount of one and one-times their respective rates of pay for all hours worked each workweek above forty (40), yet they purposefully chose not to do so.

61.     Thus, Plaintiff Karlin and all similarly situated Loan Originators are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked in excess of forty (40) in a workweek.

## NY CLASS ACTION ALLEGATIONS

62.    Plaintiff Karlin repeats and re-alleges each of the above paragraphs.

63.    Plaintiff Karlin brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all current and former Loan Originators from any of Defendants New York locations who from six years preceding July 24, 2017 through the disposition of this action have: (1) not received overtime pay when they worked more than 40 hours in a workweek in violation of the NYLL §§ 650 et seq., (2) did not receive the required Notice and Acknowledgment of Pay form in violation of NYLL §195; and/or (3) did not receive accurate wage statements in violation of NYLL § 195 (collectively, the "Loan Originator Class").

64.    The persons in the Loan Originator Class are so numerous that joinder of them all is impracticable. The precise number of such persons is known to Defendants, is readily ascertainable, and can be easily determined from its records.

65.    Defendants have acted or have refused to act on grounds generally applicable to the Loan Originator Class, thereby making appropriate final injunctive relief or declaratory relief with respect to such classes as a whole.

66.    There are questions of law and fact common to the Loan Originator Class that predominate over any questions solely affecting individual members of the Loan Originator Class, including but not limited to:

   a.    whether Defendants have failed and/or refused to pay the Loan Originator Class  an overtime premium for the hours worked in excess of forty (40) hours per workweek within the meaning of NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

b.  whether Defendants willfully failed to comply with the notice and recordkeeping requirements of NYLL §§ 198(1)(b) and 198(1)(d);

c.  the nature and extent of Class-wide injury;

d.  whether the Defendants have a policy of misclassifying the Loan Originator Class as exempt from coverage of the overtime provisions of the NYLL;

e.  whether Defendants' policy of misclassifying the Loan Originator Class was done willfully;

f.  whether Defendants can prove that their unlawful policies were implemented in good faith.

g.  whether Defendants provided accurate wage statements, as required by the NYLL §195.

67.    There are questions of law and fact common to the Loan Originator Class that predominate over any questions solely affecting individual members of the Loan Originator Class, including but not limited to:

a.  whether Defendants have failed and/or refused to pay the Loan Originator Class an overtime premium for the hours worked in excess of 40 hours per workweek within the meaning of NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

b.  whether Defendants willfully failed to comply with the notice and recordkeeping requirements of NYLL §§ 198(1)(b) and 198(1)(d);

c.  the nature and extent of Class-wide injury;

    d.   whether Defendants' policy of failing to pay overtime wages to the Loan Originator Class was done willfully;

    e.   whether Defendants can prove that their unlawful policies were implemented in good faith.

    f.   whether Defendants provided accurate wage statements, as required by the NYLL §195.

68.    The claims of Plaintiff Karlin as class representatives for the Loan Originator Class are typical of the claims of the members of their respective classes.

69.    Plaintiff Karlin as class representative, and the undersigned counsel will fairly and adequately protect the interests of the Loan Originator Class.

70.    Class adjudication of the Loan Originator Class are appropriate because prosecution of separate actions by class members could result in inconsistent adjudications establishing incompatible pay practices and judgments.

71.    Class adjudication is superior to all other methods to resolve the disputes for the Loan Originator Class over whether Defendants have violated the overtime wage requirements set forth by the NYLL and is necessary in order to fairly and completely litigate the dispute.

## FACTUAL ALLEGATIONS REGARDING PLAINTIFF KARLIN'S BREACH OF CONTRACT CLAIM

72.    Plaintiff Karlin repeats and re-alleges each of the above paragraphs.

73.    Plaintiff Karlin employment with Defendants began in or about October 2014 and ceased on or about March 24, 2016.

74.    On or about March 22, 2016, Plaintiff Karlin authorized David Shamooil to negotiate Plaintiff Karlin's separation of employment with Defendants.  Ultimately, David Shamooil was successful and David Shamooil and Defendants entered into a separation

13

agreement ("hereinafter, "Separation Agreement"), which provided, as it pertains to Plaintiff

Karlin, the following:

    a. Plaintiff Karlin would receive $37,000.00 within forty-five (45) days from

       the date of the Settlement; and

    b. Plaintiff Karlin would receive compensation for any of his loans that

       existed in Defendants' pipeline at the date of Settlement at three hundred

       (300) basis points for each loan that was closed and sold by Defendants,

       and six hundred (600) basis points for the reverse mortgage in Defendants'

       pipeline, provided it was closed and sold by MCS.

75.    The following loans subsequently closed which were originated by Plaintiff

Karlin:

| MCS LOAN NUMBER | CLOSING DATE | LOAN AMOUNT | COMMISSION DUE |
|---|---|---|---|
| 2511601010531 | March 28, 2016 | $1,050,000.00 | $31,500.00 |
| 1001511009753 | April 6, 2016 | $662,774.00 | $19,883.22 |
| 1001512010343 | April 7, 2016 | $696,500.00 | $20,895.00 |
| 1001512010288 | April 11, 2016 | $434,250.00 | $13,027.50 |
| 2511602010945 | April 15, 2016 | $422,212.00 | $12,666.36 |
| 2501601010648 | April 22, 2016 | $456,000.00 | $13,680.00 |
| 1001504007032 | May 13, 2016 | $662,774.00 | $19,883.22 |
| | | | $131,535.30 |

76.    To date, none of the commissions indicated have been paid by Defendants and

remain due and owing to Plaintiff Karlin in breach of the Separation Agreement. As such,

Defendants is indebted to Plaintiff Karlin in the total amount of $131,535.30 as and for his unpaid commissions.

77.     On or about May 6, 2016, Plaintiff Karlin was issued a check by Defendants in the amount of $5,000.00 toward his severance pay. To date, Defendants have not paid any further amounts to Plaintiff Karlin. Payment was due within forty-five days, which has now elapsed. As such, Defendants are indebted to Plaintiff Karlin in the amount of $32,000.00 for unpaid severance monies.

78.     As a direct and/or proximate result of Defendants' above wrongful acts and practices, Plaintiff has suffered and continues to suffer substantial economic damages.

## FIRST CLAIM FOR RELIEF FOR LOAN ORIGINATORS NATIONWIDE
### (FLSA: UNPAID OVERTIME WAGES)

79.     Plaintiff Karlin, on behalf of himself and the Loan Originator Collective, reallege and incorporate by reference paragraphs 1 through 78 as if they were fully set forth again herein.

80.     Defendants employed Plaintiff Karlin and employed or continues to employ, each member of the Loan Originator Collective within the meaning of the FLSA.

81.     Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

82.     Plaintiff Karlin consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

83.     The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq.*, apply to Defendants.

84.     Defendants had a policy and practice of refusing to pay overtime compensation to their Loan Originators for hours worked in excess of 40 hours per workweek.

15

85.     Loan Originators regularly and customarily worked at Defendants' offices.

86.     As a result of Defendants' willful failure to compensate Plaintiff Karlin and the members of the Loan Originator Collective at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

87.     As a result of Defendants' willful failure to record, report, credit, and/or compensate Plaintiff Karlin and the members of the Loan Originator Collective, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

88.     Defendants' failure to review the duties of the Loan Originators and review the actual amount of time the Loan Originators spent at Defendants' offices is evidence that Defendants knew and/or showed reckless disregard that their conduct was prohibited by 29 U.S.C. § 255(a).

89.     As a result of Defendants' FLSA violations, Plaintiff Karlin and the members of the Loan Originator Collective are entitled to recover from Defendants (a) overtime compensation; (b) an additional, equal amount as liquidated damages for Defendants' willful violations of the FLSA; (c) interest; and, (d) reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

90.     Because Defendants' violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

## SECOND CLAIM FOR RELIEF FOR LOAN ORIGINATORS IN NEW YORK
## (NYLL: UNPAID OVERTIME WAGES)

91.     Plaintiff Karlin, on behalf of himself and the Loan Originator Class members, realleges and incorporates by reference paragraphs 1 through 90 as if they were fully set forth again herein.

92.     Defendants employed or continued to employ Plaintiff Karlin and the members of the Loan Originator Collective within the meaning of the NYLL.

93.     Defendants have engaged in a widespread pattern and practice of violating the overtime wage provisions of Article 19 of the NYLL and its supporting regulations, as detailed in this Complaint.

94.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

95.     Defendants have failed to pay Plaintiff Karlin and the members of the Loan Originator Collective the overtime wages to which they are entitled under the NYLL.

96.     By virtue of Defendants' failure to pay Plaintiff Karlin and the members of the Loan Originator Collective overtime wages for all hours worked in excess of forty (40) hours per week, Defendants have willfully violated NYLL Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R., Part 142.

97.     As a result of Defendants' policy and/or practice and the duties inherent to Loan Originators, Loan Originators spent a majority of their time each workweek working in the Corporate Defendant's offices.

98.     Defendants willfully caused or were otherwise aware that Plaintiff Karlin and the members of the Loan Originator Class spent a majority of their time each workweek working in the Corporate Defendant's offices.

99.     Defendants' failure to review the duties of the Loan Originators and review the actual amount of time the Loan Originators spent at Defendants' offices is evidence that Defendants knew and/or showed reckless disregard that their conduct was prohibited by 29 U.S.C. § 255(a).

100.    As a result of Defendants' willful violations of the NYLL, Plaintiff Karlin and the members of the Loan Originator Class are entitled to recover from these Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and prejudgment and post-judgment interest.

101.    Defendants NYLL violations have caused Plaintiff Karlin and the members of the Loan Originator Class irreparable harm for which there is no adequate remedy at law.

### THIRD CLAIM FOR RELIEF FOR ALL NEW YORK LOAN ORIGINATORS (NYLL: NON-COMPLIANCE WITH NOTICE/ RECORDKEEPING REQUIREMENTS)

102.    Plaintiff Karlin on behalf of himself and all Loan Originators realleges and incorporates by reference paragraphs 1 through 101, as if they were fully set forth again herein.

103.    NYLL § 195(1)(a) requires, among other things, that Defendants provide each employee with a relevant information concerning their compensation, Defendants' contact information, and an affirmation that the notice is in the employee's primary language.

104.    NYLL § 195(4) requires, among other things, that Defendants establish and maintain, for at least six years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

105.    NYLL § 661 requires that Defendants establish and maintain, *inter alia,* true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

106.    12 N.Y.C.R.R. § 142-2.6 requires Defendants to establish, maintain and preserve, for six years, weekly payroll records showing, *inter alia*, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

107.    NYLL § 195(3) requires that Defendants furnish each of its employees with a statement with each payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

108.    N.Y.C.R.R. § 142-2.7 requires Defendants to furnish each employee with a statement with each payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

109.    Defendants did not provide Plaintiff Karlin and the Loan Originator Class members with the requisite, accurate notices and statements described above in the foregoing paragraphs.

110.    As a result of Defendants failure to comply with the notice and record keeping requirements of NYLL §§ 195(1)(a) and 195(3), Plaintiff Karlin and the Loan Originator Class members are entitled to recover from Defendants all penalties as provided by NYLL § 198(1)b and 198(1)d.

## FOURTH CLAIM FOR RELIEF FOR BREACH OF CONTRACT
### (Breach of Contract Between Defendants and Plaintiff Karlin)

111.    Plaintiff Karlin realleges and incorporates by reference paragraphs 1 through 110, as if they were fully set forth again herein.

112.    Defendants entered into a Separation Agreement whereby Defendants agreed to pay Plaintiff Karlin in exchange for his services as an employee of Defendants, as well as a portion attributed to severance.

113.    Defendants breached the Separation Agreement and have willfully and intentional failed and refused to pay Plaintiff Karlin compensation which remains due and owing to him, despite due demand for same.

114.    Plaintiff Karlin is entitled to damages in an amount to be determined at trial, but of not less than ONE HUNDRED SIXTY-THREE THOUSAND FIVE HUNDRED THRITY-FIVE DOLLARS AND THIRTY CENTS ($163,535.30), together with interest and liquidated damages thereon, and which damages are increasing monthly.

## FIFTH CLAIM FOR RELIEF FOR BREACH OF CONTRACT
### (Breach of Third-Party Beneficiary Contract Between Defendants and Plaintiff Karlin)

115.    Plaintiff Karlin realleges and incorporates by reference paragraphs 1 through 114, as if they were fully set forth again herein.

116.    Plaintiff Karlin and non-party David Shamooil entered into a Separation Agreement which was intended for the benefit of the Plaintiff Karlin in that it set forth specific terms of severance payments and compensation for loans which he originated prior to his resignation from Defendants.

117.    The Settlement was intended for Plaintiff Karlin's benefit.

118.    The benefit to Plaintiff Karlin is sufficiently immediate to indicate the assumption by Defendants of a duty to compensate Plaintiff.

119.    Defendants breached the Separation Agreement by failing to proper compensate Plaintiff Karlin in full.

120.     Plaintiff Karlin is entitled to damages in an amount to be determined at trial, but of not less than ONE HUNDRED SIXTY-THREE THOUSAND FIVE HUNDRED THRITY-FIVE DOLLARS AND THIRTY CENTS ($163,535.30), together with interest and liquidated damages thereon, and which damages are increasing monthly.

### DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Karlin, the Loan Originator Collective members, and the Loan Originator Class members are entitled to and pray for the following relief:

a.  Designation of this action as a FLSA collective action on behalf of the Loan Originator Collective members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to members of such collectives, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling the statute of limitations;

b.  A declaratory judgment that Defendants' practices complained of herein are unlawful under the FLSA, New York Labor Law, and common law;

c.  An award of unpaid wages for all hours worked in excess of 40 in a workweek at a rate of one and one-half times the regular rate of pay under the FLSA and/or the NYLL;

d.  An award of liquidated damages as a result of Defendants' willful failure to compensate Plaintiff Karlin, the Loan Originator Collective members, and the

Loan Originator Class members for one and one-half the regular rate of pay for hours worked in excess of forty in a work week pursuant to the FLSA;

e.  An award of liquidated damages as a result of Defendants' willful failure to compensate Plaintiff Karlin, the Loan Originator Collective members, and the Loan Originator Class members for one and one-half the regular rate of pay for hours worked in excess of forty in a work week pursuant to the NYLL;

f.  Certification of the claims brought against the Defendants in this case under the NYLL, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

g.  Designation of Plaintiff Karlin as a representative of the Loan Originator Class and counsel of record as Class Counsel;

h.  Designation of Plaintiff Karlin as representative of the Loan Originator Collective and counsel of record as Class Counsel;

i.  Penalties under NYLL §§ 198(1)(b) and 198(1)(d) for the Defendants' failure to comply with the notice and record keeping requirements of NYLL §§ 195(1) and 195(3);

j.  Injunctive relief, pursuant to the NYLL, enjoining Defendants from engaging in the practices alleged herein.

k.  An award of damages to Plaintiff Karlin arising from Defendants' breach of contract and breach of third-party beneficiary contract, including treble and liquidated damages, as well as interest, attorneys' fees and costs, as well as compensatory damages; punitive damages; economic damages; and pre-and post-judgment interest.

l.   An award of pre-judgment and post-judgment interest;

m.  An award of costs and expenses of this action together with reasonable attorneys'

and expert fees and an award of service payments to Plaintiffs; and

n.   Such other and further relief as this Court deems just and proper.

Dated:        New York, New York            Stevenson Marino LLP
              October 14, 2017              Attorneys for Plaintiff

                                            By:___/s/ Justin R. Marino_____.
                                                 Justin R. Marino
                                            (212) 939.7228 (o)
                                            (212) 531-6129 (f)
                                            jmarino@stevensonmarino.com

                                            J.R. Stevenson
                                            (212) 939.7588  (o)
                                            (212) 531-6129 (f)
                                            jrs@stevensonmarino.com

                                            75 Maiden Lane, Suite 402
                                            New York, New York 10038

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR
SERVICES RENDERED**

To:     Ten Largest Shareholders of MCS Mortgage Bankers, Inc,
        20 Oak Street
        Patchogue, New York, 11772

To:     David Kotkin
        20 Oak Street
        Patchogue, New York, 11772

To:     Stephen Petuck
        20 Oak Street
        Patchogue, New York, 11772

To:     Frank Walter
        20 Oak Street
        Patchogue, New York, 11772

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business
Corporation Law of New York, the ten largest shareholders of MCS Mortgage Bankers, Inc., as
well as David Kotkin, Stephen Petuck, and Frank Walter, are hereby notified that Plaintiff
Karlin, and others similarly situated intend to charge you and hold you personally liable, jointly
and severally, for all debts, wages, and/or salaries due and owing to them as laborers, servants
and/or employees of the said corporations for services performed by them for the said
corporations within the six (6) years preceding the date of this notice and have expressly
authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: New York, New York              Stevenson Marino LLP
       October 14, 2017                Attorneys for Plaintiffs


                                       By:____/s/ Justin R. Marino____.
                                              Justin R. Marino
                                       (212) 939.7228 (o)
                                       (212) 531-6129 (f)
                                       jmarino@stevensonmarino.com
                                       J.R. Stevenson
                                       (212) 939.7588  (o)
                                       (212) 531-6129 (f)
                                       jrs@stevensonmarino.com

                                       75 Maiden Lane, Suite 402
                                       New York, New York 10038

24

CONSENT TO BECOME A PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf in a collective and class action, to contest the alleged failure of MCS Mortgage Bankers, Inc., and/or its parent, subsidiary, predecessor, successor, affiliated, and related companies, including their individual owners (the "Company"), to pay me overtime wages as required under state and/or federal law and also authorize the filing of this consent in a lawsuit challenging such conduct I hereby designate the law firm of Stevenson Marino LLP to represent me in the suit and to make decisions on my behalf concerning the litigation and settlement I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I also consent to join any separate or subsequent action or arbitration proceeding to assert my claim against the Company and/or other entities and/or persons potentially liable.

AGREED AND ACCEPTED:

Signature:_____
Peter Karlin

Date:__10/14/2017_____

25